**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Yadin Company, Inc, d/b/a Automotive Dynamics, Inc., </br></br>    Plaintiff, </br></br> vs. </br></br> City of Peoria, et al., </br></br>    Defendants. | No. CV-06-1317-PHX-PGR </br></br> OPINION AND ORDER |

Pending before the Court is defendant City of Peoria's Motion to Dismiss (doc. #6), wherein the City of Peoria ("Peoria") seeks the dismissal of the entirety of this action pursuant to Fed.R.Civ.P. 12(b)(6).[1]  Having taken the factual allegations of the complaint as true and having construed them in the light most favorable to plaintiff The Yadin Company, Inc., d/b/a Automotive Dynamics, Inc. ("Yadin"), the Court finds that the motion to dismiss should be granted in part with leave to amend, and deferred in part.

---

[1] Co-defendant Comet Towing, Inc. has filed a one-sentence joinder in the motion to dismiss.

Background

This action arises from Peoria's failure to award a municipal towing contract to Yadin. The complaint makes the following pertinent allegations:

(1) that Yadin held a towing services contract with Peoria from May 1994 until November 2001, when Peoria awarded the contract to co-defendant Comet Towing, Inc. ("Comet");

(2) that Yadin thereafter became aware from numerous complaints from citizens that Comet was overcharging for its services under the towing contract by adding unauthorized service and processing fees, that Yadin informed Peoria of Comet's contract violations by letter dated October 1, 2002, that Peoria produced an audit of Comet on June 18, 2003, but that the audit failed to address Comet's violations of the towing contract;

(3) that at that time (presumably June 2003), Herman Koebergen, the supervisor of Peoria's Materials Management Department, advised Yadin's principal that Yadin would "never receive another towing contract with the City[;]"

(4) that Peoria solicited bids for a new four-year towing contract in January 2005, that both Yadin and Comet submitted bids on the new contract, and that Peoria informed Yadin in April 2005 that the towing contract had been awarded to Comet because a contract with Comet would be the most advantageous to Peoria;

(5) that Yadin made a public records request to Peoria in May 2005 for material related to Comet's bid and Peoria's decision-making process, that the disclosed records indicated that Peoria awarded the contract to Comet on improper grounds in that while Peoria gave Yadin 23 higher points than Comet based on Yadin's superior cost considerations and staff experience and the fact

- 2 -

that Comet had the least experience of all of the vendors and because Comet's pricing was a little high, Peoria gave Comet 31 more points than Yadin in the "company's experience/performance" category for the stated reason that Yadin engaged in "[u]nprofessional performance during contract period with current vendor [Comet]. Made accusation to members of City staff[,]" and that Peoria arbitrarily awarded Comet 16 more points than Yadin in the "conformance to proposal and scope of work" category because Yadin's sections were not tabbed;

(6) that Yadin filed a notice of claim with Peoria for $4,000,000 on December 12, 2005 but that Peoria never responded to it; and

(7) that the Maricopa County Attorney has failed to respond to Yadin's request that he initiate a quo warranto action against Peoria and Comet for Comet's unlawful holding and exercising of Peoria's towing franchise.

The complaint raises three claims: Count One seeks a declaration pursuant to A.R.S. § 12-1831 that Peoria's towing contract with Comet is void and illegal and that the towing contract should have been awarded to Yadin; Count Two alleges that Peoria violated Yadin's rights under the U.S. and Arizona Constitutions by not awarding it the towing contract in retaliation for its exercise of its right to petition government and provide comment on matters of public interest, including the right to report any potential and actual violations by Comet of the terms of its towing contract; and Count Three seeks leave pursuant to A.R.S. § 12-2043 to bring a quo warranto action against Peoria and Comet for Comet's unlawful holding and exercise of Peoria's towing franchise because the Maricopa County Attorney has failed to bring such an action.

Discussion

This action was removed to this Court on the basis of federal question

jurisdiction. The sole federal question alleged in the complaint is that portion of Count Two that raises a retaliation claim against Peoria based on an alleged violation of Yadin's First Amendment's right "to petition government and provide comment on matters of public interest," which the Court construes as being brought pursuant to 42 U.S.C. § 1983.

A. <u>Monell</u> Issue

Peoria argues in part that the § 1983 claim should be dismissed pursuant to <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018 (1978), on the ground that the claim fails to allege that Peoria has a custom or policy of violating First Amendment rights in the bid or procurement process. The Court agrees.

Yadin initially argues in part that Peoria's <u>Monell</u> argument is "totally inappropriate at the motion to dismiss stage, before [it] has been allowed to take any discovery" on Peoria's policies and conduct because the "vast majority" of cases in the Ninth Circuit dismissed pursuant to <u>Monell</u> involve motions for summary judgment and not motions to dismiss. This is a meritless argument because a § 1983 claim against a municipality is appropriately dismissed pursuant to Rule 12(b)(6) if the complaint does not make at least a bare allegation that the allegedly unconstitutional conduct at issue conformed to an official policy or custom. *See e.g.*, <u>Molina v. Richardson</u>, 578 F.2d 846, 848 (9th Cir.), *cert. denied*, 439 U.S. 1048 (1978) (Court affirmed the dismissal of a § 1983 claim against a city for failure to state a claim because the plaintiff did not argue that the allegedly illegal conduct represented the city's official policy.)

Yadin further argues, fairly impliedly, that the complaint does allege an official policy underlying the retaliatory denial of its bid on the towing contract. Its position is apparently that the policy at issue is the statement by Koebergen, a

- 4 -

1  Peoria supervisory employee, that Yadin would never receive another towing
2  contract from Peoria.  Peoria argues in its reply that the complaint does not allege
3  that Peoria has a policy of retaliating against persons for exercising
4  constitutionally protected rights, or that any final policymaker violated its rights.

5        The Court concludes that the complaint, as currently written, does in fact
6  fail to state an actionable § 1983 claim based on Monell.  Under Monell, a
7  municipality may be held liable under § 1983 only for constitutional violations
8  occurring pursuant to an official government policy or custom because there is no
9  § 1983 respondeat superior liability based on a municipality's employment of a
10 tortfeasor.  There are three ways to show a policy or custom of a municipality:
11 (1) by showing a longstanding practice or custom which constitutes the
12 municipality's standard operating procedure; (2) by showing that the decision-
13 making official was a final policy-making authority under state law whose edicts or
14 acts may fairly be said to represent official policy in the area of decision; or (3) by
15 showing that an official with final policy making authority either delegated that
16 authority to, or ratified the decision of, a subordinate. Menotti v. City of Seattle,
17 409 F.3d 1113, 1147 (9th Cir. 2005).  In the Ninth Circuit, a claim of municipal
18 liability under § 1983 is sufficient to withstand a motion to dismiss even if it is
19 based on nothing more than a bare allegation that the conduct of municipal
20 employees conformed to official policy, custom, or practice. Galbraith v. County of
21 Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002).   Yadin's § 1983 claim is
22 deficient because it does not identify any official city policy or custom or
23 specifically allege that any city official conformed his or her conduct to that policy
24 or custom in violating Yadin's First Amendment rights.

25       While Yadin inexplicably does not request the opportunity, this pleading

deficiency is one that may be able to be corrected through an amended complaint. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (Internal quotation marks omitted).

B. Umbehr Issue

In effect contending that any amendment of the § 1983 claim would be futile, Peoria also argues that the § 1983 claim fails to state a claim even if it complies with Monell because Yadin did not have an ongoing business relationship with Peoria at the time of the bid process and award at issue.

Underlying the resolution of this issue is Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr, 518 U.S. 668, 116 S.Ct. 2342 (1996). Umbehr involved a § 1983 action by an independent contractor who alleged that county commissioners terminated (or prevented the automatic renewal of) his trash hauling contract with the county in retaliation for his First Amendment-protected criticism of the county and the board. The Supreme Court concluded in Umbehr that, as with government employees, government contractors are protected by the First Amendment from termination of their government contracts in retaliation for the exercise of their freedom of speech notwithstanding that they did not have a property interest in their contracts. At issue in this case is the Supreme Court's express limitation of its holding in Umbehr:

> [W]e emphasize the limited nature of our decision today. Because Umbehr's suit concerns the termination of a pre-existing commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship.

- 6 -

1   518 U.S. at 685, 116 S.Ct. at 2352.

2   The Ninth Circuit has not resolved the issue of whether <u>Umbehr</u>'s rationale
3   should be applied to mere bidders on new government contracts, and there is a
4   split of authority among the few circuits that have decided the issue.

5   Peoria, relying on the Third Circuit's decision in <u>McClintock v. Eichelberger</u>,
6   169 F.3d 812 (3rd Cir.), *cert. denied*, 528 U.S. 876 (1999), contends that <u>Umbehr</u>
7   should not be extended to a mere bidder situation such as this one.  In
8   <u>McClintock</u>, the court affirmed the Rule 12(b)(6) dismissal of a § 1983 action by a
9   marketing and advertising firm which alleged that its First Amendment rights were
10  violated because its bid for a government contract was rejected in retaliation for
11  its support of the political opponents of the public officials who awarded the
12  contract.  The majority of the Third Circuit's panel, over a strong dissent, refused
13  to extend the <u>Umbehr</u> ruling to situations where the disappointed independent
14  contractor bidder did not have a pre-existing commercial relationship with the
15  government entity, noting in part that its previous case law cautioned against
16  extending First Amendment holdings if they would cause the judiciary to intrude
17  into such traditional practices as contract awards by a government entity.  169
18  F.3d at 816-17.

19  In the absence of controlling authority, the Court concludes that the better
20  reasoned view on this issue is the one more recently presented by the Fifth
21  Circuit in <u>Oscar Renda Contracting, Inc. v. City of Lubbock, Texas</u>, 463 F.3d 378
22  (5th Cir. 2006), a decision rendered after the completion of the briefing on Peoria's
23  motion.  The <u>Oscar Renda</u> case involved a § 1983 action by a construction
24  company which alleged that its First Amendment rights were violated because its
25  bid for a public works project was rejected in retaliation for its previous lawsuit

against a different government entity. The trial court dismissed the action pursuant to Fed.R.Civ.P. 12(b)(6) in part because the construction company did not have a pre-existing commercial relationship with the city. In reversing the dismissal and in expressly rejecting the McClintock approach, the Fifth Circuit noted that the Supreme Court, prior to Umbehr, had held in a government employment context that no prior relationship is required before an employment applicant is permitted to assert a claim for First Amendment retaliation, citing in particular to Rutan v. Republican Party of Illinois, 497 U.S. 62, 110 S.Ct. 2719 (1990), wherein the Supreme Court held in part that a government entity's refusal to hire someone as an employee based on that person's political affiliation or support could be considered to be an impermissible infringement on First Amendment rights. 463 F.3d at 383. The Fifth Circuit, reading Umbehr and Rutan together to conclude that "[s]ince First Amendment rights have been afforded to individuals applying for employment with the government, no different result should be afforded to bidders applying for 'employment' with the government under a bidding arrangement[,]" held that the Supreme Court would not require a contractor to have a prior relationship with a government entity before being able to assert a First Amendment claim.[2] Id. at 385-86. The Court is similarly persuaded.

Because the Court concludes that the McClintock decision should not

---

[2] The Fifth Circuit also concluded that Justice Scalia's dissent in Umbehr supported its reasoning. 463 F.3d at 385. Justice Scalia, referring in his dissent to the statement in Umbehr reserving the issue of whether contractors without a pre-existing relationship are entitled to First Amendment protection, stated that it was "[n]ot likely; in fact, not even believable" that the Supreme Court majority would fail to extend First Amendment protection to bidders without a pre-existing relation with the government entity given the Supreme Court's previous decisions, such as Rutan. 518 U.S. at 709, 116 S.Ct. at 2373 (Scalia, J., dissenting).

1  control Yadin's § 1983 claim, the Court will permit Yadin a single opportunity to
2  amend its complaint to conform to the pleading requirements of <u>Monell</u>.

3  Peoria has also moved to dismiss all of Yadin's state law claims. Since the
4  Court is dismissing the only federal claim with leave to amend, the Court, in the
5  exercise of its discretion, will defer ruling on the propriety of the state law claims
6  until such time as Yadin files an actionable federal claim. If the § 1983 claim is
7  not timely and/or properly amended, the Court will decline to exercise
8  supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.
9  § 1367(c) and will remand those claims to the state court. If an actionable § 1983
10 claim is filed, the Court will then reinstate and will resolve the remainder of the
11 motion to dismiss as necessary. Therefore,

12 IT IS ORDERED that the City of Peoria's Motion to Dismiss (doc. #6) is
13 granted in part solely to the extent that the portion of Count Two of the complaint
14 alleging a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 is
15 dismissed pursuant to Fed.R.Civ.P. 12(b)(6) with leave to file an amended
16 complaint. The Court defers ruling on that portion of the motion to dismiss
17 directed at the state law claims.

18 IT IS FURTHER ORDERED that plaintiff The Yadin Company, Inc., d/b/a
19 Automotive Dynamics, Inc. shall no later than **February 5, 2007** file either an
20 amended complaint properly stating a federal claim or a notice stating that it will
21 not file an amended complaint.

22 DATED this 8th day of January, 2007.

Paul G. Rosenblatt
United States District Judge