**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Yadin Company, Inc., d/b/a Automotive Dynamics, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> City of Peoria, et al., <br><br> Defendants. | No. CV-06-1317-PHX-PGR <br><br> (Mar.Cty.Sup.Ct. No. CV 2006-005510) <br><br> <u>ORDER OF PARTIAL DISMISSAL and REMAND</u> |

Pending before the Court is defendant City of Peoria's Motion to Dismiss Amended Complaint (doc. #22), wherein the City of Peoria ("Peoria") seeks the dismissal of the remaining portion of this action pursuant to Fed.R.Civ.P. 12(b)(1) and (6). Having considered the oral argument of counsel and having taken the factual allegations of the complaint as true and having construed them in the light most favorable to plaintiff The Yadin Company, Inc., d/b/a Automotive Dynamics, Inc. ("Yadin"), the Court finds that the motion to dismiss should be granted in part.

<u>Background</u>

Yadin Company commenced this action in the Maricopa County Superior Court on April 14, 2006 against named defendants Peoria and Comet Towing, Inc., and various fictitious defendants. The named defendants removed the case

on May 17, 2006 solely on the basis of federal question jurisdiction.  This action arises from Peoria's failure in 2005 to award to Yadin its contract for Police and Fleet Department Towing Services.

Yadin filed an amended complaint (doc. #14) on February 5, 2007 pursuant to Court order. The amended complaint makes the following pertinent allegations:

(1) that Yadin held a towing services contract with Peoria from May 1994 until November 2001, when Peoria awarded the contract to Comet Towing;

(2) that Yadin thereafter became aware from numerous complaints from citizens that Comet was overcharging for its services under the towing contract by adding unauthorized service and processing fees, that Yadin informed Peoria of Comet's contract violations by letter dated October 1, 2002, that Peoria produced an audit of Comet on June 18, 2003, but that the audit failed to address Comet's violations of the towing contract;

(3) that at that time (presumably June 2003), Herman Koebergen, the supervisor of Peoria's Materials Management Department, advised Yadin's principal that Yadin would "never receive another towing contract with the City[;]"

(4) that Peoria solicited bids for a new four-year towing contract in January 2005, that both Yadin and Comet submitted bids on the new contract, and that Peoria informed Yadin in April 2005 that the towing contract had been awarded to Comet because a contract with Comet would be the most advantageous to Peoria;

(5) that Yadin made a public records request to Peoria in May 2005 for material related to Comet's bid and Peoria's decision-making process, that the disclosed records indicated that Peoria awarded the contract to Comet on improper grounds in that while Peoria gave Yadin 23 higher points than Comet

based on Yadin's superior cost considerations and staff experience and the fact that Comet had the least experience of all of the vendors and because Comet's pricing was a little high, Peoria gave Comet 31 more points than Yadin in the "company's experience/performance" category for the stated reason that Yadin engaged in "[u]nprofessional performance during contract period with current vendor [Comet]. Made accusation to members of City staff[,]" and that Peoria arbitrarily awarded Comet 16 more points than Yadin in the "conformance to proposal and scope of work" category because Yadin's sections were not tabbed;

(6) that Yadin filed a notice of claim with Peoria for $4,000,000 on December 12, 2005 but that Peoria never responded to it; and

(7) that the Maricopa County Attorney failed to respond to Yadin's request that he initiate a quo warranto action against Peoria and Comet for Comet's unlawful holding and exercising of Peoria's towing franchise.

The amended complaint raises three claims: Count One seeks a declaration pursuant to A.R.S. § 12-1831 that Peoria's towing contract with Comet is void and illegal under Peoria's procurement code and Arizona law and that the towing contract should have been awarded to Yadin; Count Two alleges that Peoria violated Yadin's civil rights under the First Amendment of the U.S. Constitution and Art. 2, § 5 of the Arizona Constitution by not awarding it the towing contract in retaliation for its exercise of its right to petition government and provide comment on matters of public interest, including the right to report any potential and actual violations by Comet of the terms of its towing contract; and Count Three seeks leave pursuant to A.R.S. § 12-2043 to bring a quo warranto action against Peoria and Comet for Comet's unlawful holding and exercise of Peoria's towing franchise because the Maricopa County Attorney has failed to

bring such an action.

Peoria filed a Rule 12(b)(6) motion on May 31, 2006 seeking the dismissal of the entire complaint. In two orders, the Court granted the motion in part and denied it in part. In its first opinion (doc. #13), the Court dismissed the § 1983 claim, the sole federal claim, with leave to amend because it failed to state an actionable claim against Peoria pursuant to Monell v. Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978), inasmuch as it did not identify any official city policy or custom and did not specifically allege that any city official conformed his or her conduct to that policy or custom in violating Yadin's First Amendment rights; the Court deferred ruling on Yadin's state law claims pending the filing of an amended complaint that stated an actionable § 1983 claim.

After reviewing the amended complaint, the Court entered its second opinion (doc. #17) wherein it found for purposes of the motion to dismiss, based on the arguments previously raised by Peoria, that the amended § 1983 claim stated an actionable claim for purposes of Monell liability, and that the quo warranto claim (Count Three) failed to state a claim.[1]

Peoria, in its second motion to dismiss the amended complaint, now seeks the dismissal of Count One (the state law declaratory judgment claim) pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and the dismissal of Count Two (the § 1983 claim) pursuant to Fed.R.Civ.P. 12(b)(6) for failure to

---

[1] In its second opinion, the Court also rejected Peoria's argument that Yadin's notice of claim was untimely as a matter of state law, and its argument that Yadin's request for lost profits in its § 1983 claim was improper as a matter of state law.

- 4 -

state a claim.[2]

Section 1983 Claim

    A.  Reconsideration Issue

Peoria argues in part that the § 1983 portion of Count Two should be dismissed because Yadin had no ongoing relationship with Peoria at the time Yadin bid on the towing contract. The Court rejected this argument in its first opinion, concluding that the better reasoned view on this issue was that adopted in Oscar Renda Contracting, Inc. v. City of Lubbock, Texas, 463 F.3d 378 (5th Cir. 2006), *cert. denied*, 127 S.Ct. 2033 (2007), wherein the court held that the Supreme Court would not require a contractor to have a prior commercial relationship with a government entity before being able to assert a First Amendment claim arising from the denial of a public contract bid. Peoria in effect is now asking the Court to reconsider its earlier decision and adopt instead the contrary position of McClintock v. Eichelberger, 169 F.3d 812 (3rd Cir.), *cert. denied*, 528 U.S. 876 (1999), the reasoning of which the Court has already specifically rejected. The Court concludes that Peoria has not presented any compelling reason justifying such a reconsideration and the Court declines to reconsider the issue.

    B.  "Matter of Public Concern" Element of First Amendment Claim

A First Amendment retaliation claim by a private contractor against a public

---

[2] Since Peoria does not discuss in its second motion to dismiss that portion of Count Two that alleges that Peoria's conduct also violated Art. 2, § 5 of the Arizona Constitution, which provides that "[t]he right of petition, and of the people peaceably to assemble for the common good, shall never be abridged[,]" the Court has not considered the validity of the state constitutional claim and makes no ruling thereon.

entity is analyzed using the same basic approach that is used when such a claim is raised by an employee of the public entity. Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 923 (9th Cir. 2004), *cert. denied*, 544 U.S. 975 (2005). Accordingly, the contractor must establish (1) that it engaged in expressive conduct that addressed a matter of public concern, (2) that the government officials took an adverse action against it, and (3) its expressive conduct was a substantial or motivating factor for the adverse action. *Id.*

Peoria argues that Yadin's § 1983 claim, which alleges that Yadin was denied the towing contract in retaliation for its complaints to Peoria that Comet was overcharging the public for towing services, fails to state a claim in part because Yadin's expressive conduct underlying its First Amendment claim did not involve a matter of public concern.[3] The gist of Peoria's contention is that Yadin, acting as Comet's business competitor and not as a citizen, was merely addressing private business transactions between Comet and private citizens

---

[3]

The relevant allegations of the Amended Complaint state:

10. [Yadin] soon became aware of numerous complaints by citizens concerning Comet's performance under its contract with the City.
11. In particular, numerous individuals made [Yadin] aware that Comet was overcharging citizens for its services by means of alleged additional "service fees" and "processing fees" in excess of the rates that the City's contract with Comet allowed Comet to charge.
12. [Yadin] informed the City of these violations by letter dated October 1, 2002, and the City eventually produced an "audit" of Comet Towing in June 18, 2003.

The Court must accept these allegations as true notwithstanding Peoria's differing characterization of Yadin's Comet-related complaints. *See* Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007). The Court notes that Yadin's letter to Peoria, sent in October of 2002, wherein it cited Comet's alleged violations of the towing contract, is not part of the record before the Court.

who engaged Comet for owner-requested tows not covered by the municipal towing contract, and was not complaining about Comet's alleged violations of towing costs mandated by the contract, or about Peoria's administration of the contract.

Whether a contractor's expressive conduct addresses a matter of public concern is a question of law. Alpha Energy Savers, Inc. v. Hansen, 381 F.3d at 917.  This determination is to be made in light of "the content, form, and context" of the expressive conduct "as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 148, 103 S.Ct. 1684, 1690 (1983); Alpha Energy Savers, 381 F.3d at 924.  The Ninth Circuit defines the scope of the public concern element "broadly", Ulrich v. City and County of San Francisco, 308 F.3d 968, 978 (9th Cir. 2002), and while speech by a public employee or contractor that deals solely with individual personnel disputes and grievances is not of sufficient societal concern to be protected by the First Amendment, *id.*, "[e]mployee expression that can be fairly considered as relating to any matter of political, social, or other concern to the community may be characterized as speech involving a matter of public concern." Connick, 461 U.S. at 146, 103 S.Ct. at 1690; Voigt v. Savell, 70 F.3d 1552, 1559 (9th Cir. 1995), *cert. denied*, 517 U.S. 1209 (1996).  As the Ninth Circuit has noted, "[t]his standard does not require the communication to be of global importance or vital to the survival of Western civilization.  To deserve First Amendment protection, it is sufficient that the speech concern matters in which even a relatively small segment of the general population might be interested in." Roe v. City and County of San Francisco, 109 F.3d 578, 585 (9th Cir. 1997) (Interior quotation marks omitted.)

Based on the current record, the Court concludes for purposes of the

pending motion to dismiss that Yadin's allegations related to its § 1983 claim, which include allegations that Comet was charging fees to the public in excess of rates allowed by the towing contract, can fairly be characterized as alleging speech on a matter of public concern, rather than speech relating solely to a matter of personal economic interest to Yadin.[4]  See Oscar Renda, 463 F.3d at 383 (Court found that the complaint was sufficient under the Rule 12(b)(6) standard to put the defendant city on notice that the suit involved more than the plaintiff contractor's personal interests and implicated matters of public concern because it alleged that the plaintiff was asserting a First Amendment retaliation claim and that it was seeking to redress violations of federally protected rights.)

C.  Lack of Custom or Policy

Peoria further argues that the § 1983 claim must be dismissed because it did not have a custom or policy of violating the First Amendment rights of bidders and because Mr. Koebergen was not a final policymaker as a matter of state law.

Under Monell, a municipality may be held liable under § 1983 only for constitutional violations occurring pursuant to an official government policy or custom because there is no § 1983 respondeat superior liability based on a municipality's employment of a constitutional tortfeasor.  There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the municipality's standard operating procedure; (2) by showing that the decision-making official was a final policy-making authority under state law whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final

---

[4] In reaching this conclusion, the Court has not considered the numerous newspaper articles that Yadin attached as exhibits to its response.

policy making authority either delegated that authority to, or ratified the decision of, a subordinate. Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005).

In its second opinion, the Court concluded, solely for the purpose of resolving the Monell-based argument raised in Peoria's first motion to dismiss, that the portion of the amended complaint that had been added to fix the Monell issue was sufficient to state an actionable § 1983 claim under Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). As the Court noted in that opinion, the Ninth Circuit's position, as set forth in Galbraith, is that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if it is based on nothing more than a bare allegation that the [municipal employees'] conduct conformed to official policy, custom, or practice." *Id.* at 1127.

The Court concludes that its earlier Galbraith-based decision must be reconsidered in light of the Supreme Court's subsequent decision in Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955 (2007), wherein the Supreme Court tightened the requirements for pleading a civil cause of action. The Supreme Court explained in Twombly that while a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" 127 S.Ct. at 1964-65 (Internal citations, quotation marks and brackets omitted). The Supreme Court also explained that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 1965 n.3. It further explained that the factual allegations necessary to make that showing "must be enough to raise a right to relief above the speculative level," *id.* at 1965, and that a Rule 12(b)(6) motion should be granted when the plaintiff fails to "nudge [its]

claim across the line from conceivable to plausible." *Id.* at 1974.

In light of <u>Twombly</u>, the Court concludes that the "custom or policy"-related allegations forming the federal constitutional claim in Count Two of the amended complaint are too bared-boned and conclusory to state a claim.[5]

Yadin's attempt to allege the existence of <u>Monell</u> liability through the existence of a longstanding practice or custom of Peoria's constituting a standard operating procedure, as set forth in paragraphs 47 and 49 of the amended complaint, is simply too conclusory to survive - these allegations in effect are just "labels and conclusions" amounting to a "formulaic recitation of the elements of a cause of action" that the Supreme Court in <u>Twombly</u> rejected as insufficient to

---

[5]

The relevant allegations state:

47. The City's retaliatory conduct against [Yadin] is consistent with a practice or custom within the City that has risen to the level of a standard operating procedure regarding both [Yadin] and its principals.
48. Mr. Koebergen's comments and actions as alleged above constituted a pronouncement of the final policy making authority under Arizona law that fairly represent the City's official policy within his area of decision; alternatively, to the extent the City may prove that Mr. Koebergen is not the final policy making person in authority, his statements and actions, and those of the City, demonstrate that the official or officials with such final policy making authority either delegated or ratified the decision and actions of Mr. Koebergen as to [Yadin] and potentially other bidders on municipal contracts.
49. The City had a policy, custom or practice of retaliating against those who exercised their constitutional rights to make complaints against the City or the winning bidder on municipal contracts.
50. The City officials who analyzed and awarded the April 2005 towing contract bid, and the City Council that ratified that award, conformed their conduct to that policy or custom and thereby violated [Yadin's] First Amendment rights, creating a cause of action under 42 U.S.C. § 1983.

defeat a Rule 12(b)(6) motion - what is missing from the amended complaint are any factual allegations directed to any other instances in which Peoria retaliatorily rejected a contract bid based on First Amendment grounds. As Peoria correcltly notes, the factual allegations of the amended complaint, fairly read as whole, in effect only allege that the unconstitutional policy at issue is Mr. Koebergen's alleged statement and action as to Yadin alone; there are no factual allegations supporting some broad ethereal municipal policy or custom to retaliate against all who petition the city.

While municipal policy for Monell liability purposes can also be established through a single unconstitutional action committed by an official who had final policy making authority under state law, *see* City of St. Louis v. Preprotnik, 485 U.S. 112, 123, 108 S.Ct. 915, 926 (1988), such liability cannot be based solely on a single occurrence of unconstitutional action by a non-policymaking employee. McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000). While Yadin alleges in paragraph 48 of the amended complaint that Mr. Koebergen, the Peoria employee who is alleged to have told Yadin that it would never receive another municipal towing contract, was a final policymaker, or at least was delegated with final policymaking authority, these allegations are again simply conclusions for purposes of Twombly as there are no facts alleged showing that Mr. Koebergen was in fact a final policymaker for Peoria at the time the contract was awarded to Comet.

But even if the Court were to assume that the allegations of the amended complaint directed at Mr. Koebergen meet the Twombly pleading requirements, this aspect of the § 1983 claim is nevertheless defective because the Court agrees with Peoria that Mr. Koebergen, as a matter of law, had no final

policymaking authority that could subject Peoria to § 1983 liability.  The question of who is a final policymaker is one of state law and is a question of law for the Court to decide.  <u>Jett v. Dallas Independent School Dist.</u>, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723-24 (1989); <u>Christie v. Iopa</u>, 176 F.3d 1231, 1235 (9th Cir. ), *cert. denied*, 528 U.S. 928 (1999).  The evidence of record of which the Court may properly take notice, which includes Peoria's city charter and procurement code and the contract at issue, establishes that Peoria's City Council is the final policymaker for purposes of the awarding of the towing contract.  While Mr. Koebergen may have been granted some authority to exercise discretion in the course of implementing city policy regarding the towing contract, such as co-signing the contract along with the city attorney, such discretion is insufficient as a matter of law to make him a final policymaker for <u>Monell</u> purposes.  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. at 127,108 S.Ct. at 926 ("[T]he authority to make municipal policy [for purposes of § 1983 liability] is necessarily the authority to make *final* policy.  When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.") (Emphasis in original; internal citation omitted).

      While a municipality can also be held liable for an isolated constitutional violation if the final policymaker ratified a subordinate's constitutional violation, <u>Christie v. Iopa</u>, 176 F.3d at 1238; <u>Menotti</u>, 409 F.3d at 1147, Yadin's allegations in the amended complaint raising the issue of ratification, as set forth in paragraphs 48 and 50, are insufficient to meet the <u>Twombly</u> standard. To show ratification, a plaintiff must establish that the authorized policymaker approved both a subordinate's decision and the basis for it.  <u>Praprotnik</u>, 485 U.S. at 127,

108 S.Ct. at 926. This requires a showing that the decision triggering § 1983 liability "was the product of a conscious, affirmative choice to ratify the [unconstitutional] conduct in question." Haugen v. Brosseau, 351 F.3d 372, 393 (9th Cir. 2003) (internal quotation marks omitted), *rev'd on other grds*, Brosseau v. Haugen, 543 U.S. 194, 125 S.Ct. 596 (2004); *accord*, Christie v. Iopa, 176 F.3d at 1239 (Ratification requires a showing of knowledge of the alleged constitutional violation.) The amended complaint, however, contains no factual allegations showing that the final policymaker knew of Mr. Koebergen's conduct regarding Yadin prior to the towing contract being awarded and nevertheless awarded the contract to Comet. Without any such factual allegations, the retaliation-based ratification claim amounts to nothing more than mere speculation, which under Twombly is insufficient to defeat a motion to dismiss.

Dismissal of the § 1983 claim without leave to amend is proper if an amendment would not be able to cure the deficiencies in that claim. Given the record before the Court, which includes Yadin's inability to state at the oral argument on the second motion to dismiss what additional facts it would be able to plead if it were given a second opportunity to plead a cognizable First Amendment retaliation claim, the Court concludes that any further amendment would be futile.

State Law Claims

While Peoria has also moved for the dismissal of Count I, the state law declaratory action claim, for lack of jurisdiction, the Court declines to resolve that issue. Since the sole jurisdictional basis for the removal of this action is federal question jurisdiction pursuant to 28 U.S.C. § 1331, and since the Court is dismissing the sole federal claim raised in the amended complaint, the Court

concludes that it should decline to exercise supplemental jurisdiction over the remaining state law claims in the amended complaint and will remand those claims to the Maricopa County Superior Court for resolution. *See* 28 U.S.C. § 1367(c)(3); Fichman v. Media Center, 512 F.3d 1157, 1162-63 (9th Cir. 2008) ("Having granted judgment on the federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state claims.")

There being no just reason for delay, the Court further concludes that judgment pursuant to Fed.R.CivP. 54(b) should be entered now as to the federal constitutional claim alleged in Count Two, as well as to the previously dismissed Count Three (Request for Leave to Bring Quo Warranto Action). Therefore,

IT IS ORDERED that the City of Peoria's Motion to Dismiss Amended Complaint (doc. #22) is granted solely to the extent that the federal constitutional claim alleged in Count Two of the Amended Complaint is dismissed without leave to amend.

IT IS FURTHER ORDERED that the remaining portion of this action, consisting of Count One of the Amended Complaint (the state law declaratory action claim) and the state constitutional claim portion of Count Two of the Amended Complaint, is remanded to the Maricopa County Superior Court.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment pursuant to Fed.R.Civ.P. 54(b) in favor of the defendants as to the federal constitutional claim alleged in Count Two of the Amended Complaint, and

/ / /

/ / /

/ / /

as to Count Three of the Amended Complaint.

DATED this 25th day of March, 2008.

_____
Paul G. Rosenblatt
United States District Judge